### C. P. GILCHRIST V. PERRYSBURG AND TOLEDO TRANSPORTATION CO.

**1. CONDITION AS TO SUIT UPON UNDERWRITERS' POLICY.**

A clause in a Lloyds policy of insurance to the effect that "no action shall be brought to enforce the provisions of this policy except against the general manager as attorney-in-fact and representing all the underwriters, and each of the underwriters hereby agrees to abide the result of any suit so brought, as fixing his individual responsibility thereunder," where the attorney-in-fact is also an underwriter and so named in the policy, is not contrary to public policy and is valid; and where the attorney-in-fact so continues and remains a resident of the place named for service of summons, suit upon such policy should first be brought in accordance with the clause referred to.

**2. RULE WHERE ATTORNEY-IN-FACT CANNOT BE SERVED.**

Where it appears that the insurance company has ceased to do business and that it has no assets of any kind, that the person who was the attorney-in-fact at the inception of the policy has resigned or absconded, and his place of residence is unknown, the assured, notwithstanding the clause referred to in the preceding paragraph, may maintain an action against any one of the underwriters.

**3. INSTRUCTION TO DISREGARD TESTIMONY—EFFECT.**

Where, in an action on a Lloyds policy, the court directs the jury to disregard all evidence bearing upon the authority of an attorney-in-fact, whether he had resigned, or absconded, or whether service of summons could be made upon him, etc., the rulings upon the admission of such testimony become immaterial and may be disregarded by the reviewing court.

**4. EVIDENCE AS TO VALUE OF BOAT.**

In an action, on a Lloyds policy of insurance, to recover for a boat destroyed by fire, evidence that the price asked for the boat when negotiations were first commenced for her purchase was $10,000, it having been shown that the boat was sold for $4,500, is incompetent.

**5. SECONDARY EVIDENCE ADMISSIBLE.**

Where notice was served upon the underwriters, in an action upon a policy of insurance, to produce the original proofs of loss at the trial, and they fail to do so, secondary evidence of the contents thereof is not incompetent.

HEARD ON ERROR.

*Goulder, Holding & Masten*, counsel for plaintiff in error.
*Roger M. Lee*, counsel for defendant in error.

HALE, J.

The action in the court below was brought upon what is known as a Lloyds policy of insurance, against one of the several signers in the policy.

The policy was underwritten by the plaintiff in error and fourteen others, acting by their agent Henry S. McFail. Under the terms of the policy the plaintiffs in error are severally, and not jointly, liable, each for the sum of two hundred dollars.

The petition was in the ordinary form, and sufficient in law to constitute a cause of action. The defense will be more definitely stated hereafter. Upon the issues joined, complaint is made of several rulings of the court in the admission and exclusion of evidence.

Gilchrist v. Transportation Co.

The policy of insurance covered the propeller "Idler," then owned by the defendant in error, and was issued on the ——— day of ———, 18 ——. She was destroyed by fire on January 12, 1896, but the extent of the loss was in contention between the parties.

The defendant in error was permitted to introduce the testimony of several experts to prove the value of the boat at the time of the fire; and complaint is made that some of those experts had no qualifications to speak as such. While it may be true that their testimony was of very little value, we are not prepared to say that any of the testimony given by the experts was entirely incompetent.

The plaintiff in error, upon the same issue, was permitted to prove the price at which the boat was sold prior to her loss. As the testimony appears in the record, we are not prepared to say in that regard that it was error.

The defendant in error having shown of whom the boat was purchased and the price at which she was purchased, was permitted to ask the several witnesses the following questions: "What was the price asked for the steamer when the negotiations were first commenced for her purchase?" This question was objected to, the objection overruled, and exception taken by the plaintiff in error. The answer to the question was, "Ten thousand dollars." It had been shown that she was purchased for the sum of $4,500. This question was clearly incompetent, and the court erred in permitting it to be answered.

By the terms of the policy the insured was required to furnish proof of loss on or before a date after the loss, fixed by the policy. That proof of loss, it was alleged in the petition, had been furnished according to the contract. On the trial it was shown that notice had been served upon the company to produce the original proofs. They were not furnished, and the defendant in error was permitted to give secondary evidence of their contents. Under the circumstances disclosed in the bill of exceptions, we are not prepared to say that the court erred in the treatment of this subject.

The other complaints made of the rulings of the court upon the admission of testimony, will be considered in connection with other propositions in the case.

Several defenses are made in the answer filed to the petition. First, it is said, that the company issuing the policy, was forbidden to do business in Ohio; that the insurance brokers who procured the policy to be issued, were agents of the insured and procured the policy to be issued in violation of the statute of the state. This defense was not seriously insisted on, on the trial. There was no error growing out of the issue made by this claim.

The policy was issued in the name of the Niagara Fire and Marine Underwriters of Buffalo, New York, a corporation organized under the laws of New York. The policy contained this clause: "No action shall be brought to enforce the provisions of this policy except against the general manager as attorney-in-fact and representing all the underwriters, and each of the underwriters hereby agree to abide the result of any suit so brought, as fixing his individual responsibility thereunder."

This policy was issued; Henry S. McFall was the attorney-in-fact and the general manager of the insurance company; but it is alleged in the petition that he resigned and his resignation was accepted on March

5, 1896,—the fire having occurred on January 12 1896; that this fact did not come to the knowledge of the insured until March 9, 1896.

The answer denies these allegations of the petition, and alleges that McFall continued to be the attorney-in-fact and at all times a resident of the city of Buffalo where he resided at the time the policy was issued, and where summons could at any time, subsequent to the loss, have been had upon him.

On the trial, much evidence was introduced on this issue. The defendant in error attempted to show, and gave much evidence tending to establish the fact of the resignation of McFall as attorney and general manager, and to show that service of summons upon him was impossible. The plaintiff in error also gave some evidence tending to establish the facts as alleged in his answer.

After this testimony had been given to the jury, the court, on objection made by the defendant in error, to a question put to the witness, of his own motion, withdrew all such testimony from the consideration of the jury. The court said: "I think that I will say to you, gentlemen of the jury, that all the testimony with reference to the resignation of the attorney-in-fact, and whether he was in Buffalo, or was not, at the time of this loss, of these meetings and subsequent to that time, for the purpose of being served with summons, so that he could not be served with summons, all that testimony you may pay no attention to;—the court holding that the assured here, this plaintiff in this action, had the right to bring this suit against any of the underwriters who had promised or was pledged to the payment of any portion of that loss."

Exception was taken to this ruling of the court by the plaintiff in error. But the holding of the court here made was further emphasized by the court in the charge to the jury,—and an exception taken.

Under this holding of the court, we deem the many objections made to the introduction of the testimony bearing upon the authority of McFall, the particular power under which he acted, whether he had resigned as attorney-in-fact and general manager, whether he absconded, or whether service of summons could be had upon him, as to what effort was made to induce McFall to return to Buffalo, whether the company had or had not assets, are wholly immaterial;—that testimony having all been withdrawn from the jury, we need not examine the various rulings.

The vital question in the case is, whether the court was right in holding as I have indicated above.

We are of the opinion that this clause of the policy is not wholly void.

Under the terms of the policy each underwriter is severally liable for the amount designated by him in the policy. In the absence of this clause of the policy an action might be maintained against any one of the underwriters to enforce his liability under the policy, without joining his co-underwriters. It was entirely competent by contract in the policy, to designate the one to be sued in case of loss, and that all the rights of the several underwriters should be fixed and concluded by the result of such action.

Whether this clause of the policy should be enforced in cases where the attorney-in-fact is not also an underwriter, need not now be decided.

What we do hold, is that in a Lloyds policy of insurance, where the attorney-in-fact for the underwriters is also an underwriter and so named

in the policy, this clause of the policy is valid and binding on all the underwriters, and not contrary to public policy. But, notwithstanding this, if on issue joined, it be shown that in fact the company had ceased its business, that it had no assets of any kind, ·that the person who was the attorney-in-fact at the inception of the policy, had resigned or had absconded, and his place of residence was unknown, so that service of summons could not be had upon him, then we think the action could be maintained by the assured against any one of the underwriters.

If it be true that McFall was at all times a resident of Buffalo, where service of summons could be had upon him, and was in fact, and did in fact continue to be general manager of the company and the attorney-in-fact of the underwriters to that policy, then we think that the action should first have been brought against him in accordance with this stipulation in the policy.

It follows that the court erred in the ruling given above, upon the validity of this clause of the policy, and for error in the admission of testimony as above indicated, the judgment of the court of common pleas is reversed and the cause remanded for further proceedings.